1              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
2

3  UNITED STATES OF AMERICA    )   CASE NO. 1:16CR308-1
                               )
4          vs.                 )
                               )   Winston-Salem, North Carolina
5  KYLE EDWARD MASCETTI        )   October 24, 2016
   _____   11:00 a.m.
6

7

8        TRANSCRIPT OF THE **RULING ON MOTION TO SUPPRESS**
          BEFORE THE HONORABLE THOMAS D. SCHROEDER
9                UNITED STATES DISTRICT JUDGE

10

11 APPEARANCES:

12 For the Government:       ERIC L. IVERSON, AUSA
                            Office of the U.S. Attorney
13                          101 S. Edgeworth Street, 4th Floor
                            Greensboro, North Carolina 27401
14

15 For the Defendant:       KATHLEEN A. GLEASON, AFPD
                            Office of the Federal Public Defender
16                          301 N. Elm Street, Suite 410
                            Greensboro, North Carolina 27401
17

18 Court Reporter:          BRIANA NESBIT, RPR
                            Official Court Reporter
19                          P.O. Box 20991
                            Winston-Salem, North Carolina 27120
20

21

22

23

24
         Proceedings recorded by mechanical stenotype reporter.
25        Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S

 2        (The Defendant was present.)

 3            MR. IVERSON:  Good morning, Your Honor.  Mr. Iverson

 4   for the Government.  The matter before Your Honor is United

 5   States versus Kyle Edward Mascetti, 1:16CR308-1.  Mr. Mascetti

 6   is present with his counsel, Ms. Gleason.  This matter is on

 7   for a decision on the suppression hearing.

 8            MS. GLEASON:  Good morning, Your Honor.

 9            THE COURT:  Mr. Mascetti, good morning.

10            THE DEFENDANT:  Good morning.

11            THE COURT:  I noticed the Government filed a

12   supplement shortly after the hearing.  It looked like it was

13   with the consent of the Defendant.  Is there anything further

14   that's been filed after that?  I have not seen anything.

15            MS. GLEASON:  No, Your Honor.

16            THE COURT:  Okay.  I decided to just rule from the

17   bench rather than to write a written opinion in this matter.

18   So my ruling is going to take quite some time, so let me go

19   through that.

20        Let me indicate, for the record, the Defendant is charged

21   in a two-count indictment with receiving and attempting to

22   receive child pornography in violation of Title 18 of the U.S.

23   Code, Section 2252A, paragraph (a)(2)(A), and with accessing

24   with intent to view child pornography in violation of Title 18

25   of the U.S. Code, Section 2252A, paragraph (a)(5)(B).
```

1    The motions before the Court are a motion to dismiss and a

2 motion to suppress.  They have been briefed, and the Court held

3 a hearing on October 6, 2016.

4    Let me start with the motion to dismiss the indictment.  I

5 think I indicated last time I was not inclined to grant that

6 motion, and that is, in fact, my decision on that.  The

7 Government has responded, including with sealed exhibits.

8    The Defendant is moving to dismiss the indictment on the

9 ground that the Government committed and facilitated the crimes

10 charged here because the Government ran the Playpen website for

11 approximately two weeks after it seized it in 2015.  The

12 Defendant argues that the Government's conduct is outrageous

13 and warrants dismissal.  The Defendant argues that the

14 Government both facilitated the distribution of child

15 pornography and caused harm to innocent third parties, the

16 victims of the child pornography.

17    The U.S.'s response is essentially that the Government's

18 conduct was neither unreasonable nor outrageous, the Government

19 contends, because it was the only way for the Government to

20 determine who was accessing the Playpen website and that the

21 Government limited the duration of its use of the website for

22 about two weeks.

23    In *Rochin v. California*, 342 US 165, and in *U.S. v.*

24 *Russell*, 411 US 423, the Supreme Court reiterated the principle

25 that due process may be violated where the conduct of the

1  Government is so outrageous that it "shocks the conscience" and

2  violates the standards of decency and fairness so as to "bar

3  the Government from invoking judicial processes."

4      As the Fourth Circuit said in *U.S. v. Hasan*, 718 F.3d 338,

5  the Government conduct must reach the level of being "shocking"

6  or "offensive to traditional notions of fundamental fairness,"

7  or as the Fourth Circuit said in *U.S. v. Goodwin*, 854 F.2d 33,

8  the Defendant must demonstrate that the conduct of the

9  Government was "outrageous, not merely offensive."

10      Here, the Court finds that the Government's conduct can be

11  described as, in fact, unsavory.  It may even be questionable,

12  but it's not so outrageous as to shock the conscience of the

13  Court.  The Government did not create the Defendant's crimes.

14  The Defendant decided to seek out the child pornography, and he

15  had to take several affirmative, intentional, and knowing steps

16  in order to reach that point, including seeking out the Playpen

17  website whose location is not generally available, entering a

18  unique user name and password, and accessing a child

19  pornography post within the forum listed on the website.  Only

20  then was the Network Investigative Technique, otherwise known

21  as the NIT, installed in this case.

22      Given the anonymity of the Playpen site, the Government's

23  conduct is understandable and was likely necessary to identify

24  those who were users of the site and receiving child

25  pornography.  There is no indication that the Government's mere

1  seizure of the website provided it with the information

2  sufficient to identify those who were using it.  The

3  Government's use was also limited in time.

4      As the Court said in *U.S. v. Allain*, 15CR10251, from the

5  District of Massachusetts, "As child pornography migrates to

6  the hidden corners of the web, the Government will have to

7  continue to make difficult choices about how to investigate and

8  prosecute the related crimes.  Reasonable minds will no doubt

9  differ on whether the Government made the right choice here,

10 but it is not the rare case in which any misconduct on the part

11 of the Government was sufficiently blatant, outrageous,

12 egregious to warrant the dismissal of the indictment."

13     So the motion to dismiss the indictment, which is Doc. 17

14 in the record, is denied.

15     That takes me then to the motion to suppress.  The

16 Defendant moves to suppress all evidence from the search of his

17 home computer and the fruits of the search.  That's Document

18 15.  The Government has responded and has submitted a

19 supplemental response, and the Court has read all of those,

20 including a number of cases cited in support and in response of

21 the motion.

22     The Defendant's moving to suppress on several grounds.

23 The key grounds are as follows:

24     First, that the warrant lacked probable cause.

25     Second, that the warrant was an anticipatory warrant whose

1   triggering event did not occur.

2       Third, the search of the Defendant's computer in North

3   Carolina exceeded the scope of the warrant, which is argued to

4   have been limited to the Eastern District of Virginia.

5       And, fourth, even if the warrant authorized searches

6   outside of the Eastern District of Virginia, its issuance

7   violated Federal Rule of Criminal Procedure 41.

8       I'll note for the record that the Defendant is not

9   pressing any argument or request for a hearing under *Franks v.*

10  *Delaware*.

11      Let me address probable cause.  The Defendant contends

12  that the warrant lacked probable cause.  The Defendant argues

13  that the object of the warrant, the Playpen website, which is

14  accessed through the secure and essentially anonymous "onion,"

15  otherwise known as the Tor network, The Onion Router network,

16  contained both legal and illegal, that is, child pornography,

17  material.  Therefore, the Defendant argues principally that the

18  warrant was overboard inasmuch as it authorized the FBI to

19  search any user who logged into the site regardless of whether

20  he or she sought illegal content.

21      The United States argues that the warrant was supported by

22  probable cause, that the Playpen site was dedicated to child

23  pornography, and that there were grounds for the magistrate

24  judge to conclude there was a fair probability that anyone who

25  logged into the site did so with the knowledge of its illegal

1  content and an intent to access that.

2      The Court finds the following:  That is, that the Tor

3  network, by design, provides anonymity to users; that the Tor

4  network is used by criminals and for their online sexual

5  exploitation of children, in particular; that to use the Tor

6  network with anonymity, users must purposefully download

7  software for it.  Tor is designed to prevent others from

8  identifying a user's IP address for the user's personal

9  computer, which it does, in part, by the manner it routes

10 communications through other computers.

11     The Court also finds that the Playpen site is a hidden

12 site.  That is, a user cannot find it by conducting a

13 Google-type search.  Rather, a user must first obtain Playpen's

14 specific web address from another source, such as online

15 postings or from other Playpen users.  The Court finds that

16 accessing Playpen requires numerous steps, including obtaining

17 a user name and a password.

18     As noted in the supporting warrant affidavit, Playpen was

19 "dedicated to the advertisement and distribution of child

20 pornography."  It was described to contain "discussion of

21 methods and tactics offenders use to abuse children" and

22 "methods and tactics offenders use to avoid law enforcement

23 detection while perpetrating online child sexual exploitation

24 crimes," and it was explained that "administrators and users of

25 Playpen regularly send and receive illegal child pornography

1  via the website."

2     Facts that support this description contained in the

3  affidavit:

4     The main page of the site at the time of the affidavit

5  displayed partially clothed prepubescent females with their

6  legs spread apart, the phrases adjacent to the pictures said

7  "no cross-board reposts, .7z preferred, encrypt filenames,

8  include preview, Peace Out," and the images revealed Playpen as

9  a hub for trafficking illicit child pornography.

10    The Court finds that the vast majority of the sections,

11  forums, and subforums noted on the website clearly indicate the

12  presence of illegal child pornography with such titles as "hard

13  core," and they are divided in "girls" and "boys."

14    The Court finds that the warrant was supported by probable

15  cause.  The Fourth Amendment to the U.S. Constitution provides

16  that the right of the people to be secure in their persons,

17  houses, papers, and effects against unreasonable searches and

18  seizures shall not be violated, and no warrants shall issue but

19  upon probable cause supported by oath or affirmation and

20  particularly describing the place to be searched and the

21  persons or things to be seized.

22    As the Supreme Court said in *Illinois v. Gates*, "probable

23  cause is a fluid concept, turning on the assessment of

24  probabilities, in particular, factual contexts, not readily, or

25  even usually, reduced to a neat set of legal rules."

1      A magistrate judge considering whether probable cause

2   supports the issuance of a search warrant must "make a

3   practical, common-sense decision whether, given all the

4   circumstances set forth in the affidavit before him or her,

5   including the veracity and basis of knowledge of persons

6   supplying hearsay information, there is a fair probability that

7   contraband or evidence of a crime will be found in a particular

8   place."  That's from *Illinois v. Gates*.

9      A warrant application's supporting affidavit must be more

10   than conclusory and bare bones; indeed, it "must provide the

11   magistrate with a substantial basis for determining the

12   existence of probable cause."

13      Probable cause is not subject to a precise definition.

14   When examining an affidavit, a magistrate judge may rely on law

15   enforcement officers who "draw on their own experience and

16   specialized training to make inferences from and deductions

17   about the cumulative information available to them that might

18   well elude an untrained person," as long as the affidavit

19   contains facts to support the officer's conclusions.  That's

20   supported by *U.S. v. Johnson*, 519 F.3d 339 at page 343.

21      This Court should afford the magistrate's determination of

22   probable cause great deference.  Therefore, this Court's duty

23   is "to ensure that the magistrate had a substantial basis for

24   concluding that probable cause existed," as the Court indicated

25   in *Illinois v. Gates* at page 238 to 239.  A reviewing court

1  should "resist the temptation to invalidate warrants by

2  interpreting affidavits in a hypertechnical, rather than

3  commonsense, manner," as the Court noted in the Fourth Circuit

4  in *U.S. v. Blackwood*, 914 F.2d at page 142.

5      At the outset, I will note that there is a substantial

6  question in my mind whether a user has a reasonable expectation

7  of privacy in his or her IP address.  Users regularly make

8  their IP address public when using the Internet.  The issue

9  here, though, is whether the use of the Tor network created a

10 reasonable expectation of privacy inasmuch as the network is

11 designed to protect anonymity, but the Court need not reach

12 this issue because the totality of the circumstances show that

13 even if there was a reasonable expectation of privacy in the

14 information the NIT revealed, a fair probability existed that

15 those accessing Playpen intended to view and trade child

16 pornography and that the NIT would help uncover evidence of

17 these crimes.

18     The warrant affidavit describes the Tor network, its

19 emphasis on anonymity, the need for knowledge of its web

20 location and address, the need for separate user name and

21 password, and an advisory to users to use a false email

22 address.  It is unlikely that an unwary Internet traveler would

23 find the website and use it accidentally.

24     References on the Playpen website show that it is

25 dedicated to child pornography.  Its images, its filenames, the

1  vast majority, are categorized repositories for child

2  pornography, subdivided by gender and age of the victims, and

3  the directions about types of files that can be loaded onto it.

4  The warrant affidavit described how users engage in child

5  pornography private messages on Playpen to disseminate child

6  pornography.

7       So the Court finds under the totality of circumstances

8  that the magistrate judge did have probable cause to issue the

9  NIT warrant.  I will note this decision is consistent with that

10  of a host of other courts that are cited in Document 22 at page

11  24.

12       The next argument raised by the Defendant is that the

13  warrant was an anticipatory warrant whose triggering event that

14  would establish probable cause never occurred.  The Defendant

15  argues that the triggering event was visiting Playpen's

16  homepage and that this never occurred because the FBI included

17  a false description of the homepage in its application for the

18  warrant.  The Defendant argues it was false because the

19  homepage changed to an innocuous image between the time the

20  application was made and two days later when it was signed.

21  The Defendant argues that the search in his case, therefore,

22  exceeded the scope of the warrant.

23       The U.S. contends that the triggering event was not

24  visiting the site but entering a user name and password.  It

25  also argues that the NIT was not deployed until the Defendant

1  later accessed a particular section containing the child

2  pornography, that is, a section entitled "Girls HC," meaning

3  hard core, and, according to the supplemental materials filed

4  by the Government, when the Defendant opened a post within that

5  forum.

6          In *United States v. Grubbs* at 547 U.S. 90 at page 94,

7  the Supreme Court concluded that anticipatory warrants are

8  "based upon an affidavit showing probable cause that at some

9  future time, but not presently, certain evidence of a crime

10  will be located at a specified place."  The Court noted that

11  these -- generally these warrants "subject their execution to

12  some condition precedent other than the mere passage of time, a

13  so-called triggering condition."

14          Once the triggering event occurs, there is reason to

15  believe the item described in the warrant would be present.

16  Otherwise, "if the Government were to execute an anticipatory

17  warrant before the triggering condition occurred, there would

18  be no reason to believe the item described in the warrant could

19  be found at the searched location; by definition, the

20  triggering condition which establishes probable cause has not

21  yet been satisfied when the warrant is issued."

22          Thus, as the Court said in *Grubbs*, it "must be true

23  not only that if the triggering condition occurs, there is a

24  fair probability that contraband or evidence of a crime will be

25  found in a particular place, but also that there is probable

cause to believe the triggering condition will occur."  "The Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself," according to *U.S. v. Grubbs* at page 99.

Here, the Court finds that the triggering event was not visiting the web page of Playpen but logging into the site with a user name and password.  Thus, the Defendant's argument that the image on the web page having been changed at the last minute does not change the analysis.  The Court also finds that in this case the FBI did not employ the NIT until the Defendant took the additional step of accessing a post within a particular section of this site known to contain child pornography.

The Defendant's challenge to the warrant on this ground is therefore denied.

The Defendant next argues that the search warrant was issued only in the Eastern District of Virginia, and it authorized searches only in that district.  Because the Defendant's computer was located in North Carolina, it is argued the Government exceeded the scope of the warrant and the good-faith exception would not apply.

The U.S. argues that the warrant application made clear how the NIT would be deployed, that is, that it would be deployed in the Eastern District of Virginia to a computer that accesses the Playpen site maintained on the server in the

1  Eastern District of Virginia, and then it would obtain

2  identifying information from the computer logged into the site

3  no matter where it was located.

4          The Court agrees with the Government.  The warrant,

5  Attachment A, made clear that the warrant authorized the use of

6  the NIT on those who accessed the Playpen website and that the

7  NIT would be activated on "those of any user or administrator

8  who logs into the target website using a user name and

9  password."

10         This is consistent with the affidavit supporting the

11 warrant, which specifically requested authority for the NIT to

12 "cause an activated computer, wherever located, to send a

13 computer controlled by or known to the Government messages

14 containing information that may assist in identifying the

15 computer, its location, other information about the computer

16 and the user of the computer."  That's the affidavit, paragraph

17 46(a).

18         The reasonable and fair reading of the warrant

19 application and affidavit are that the Government sought

20 permission to deploy the NIT in the Eastern District of

21 Virginia onto any computer, wherever located, that logged into

22 the site.  Thus, the Defendant's challenge on that basis is

23 denied.

24         The next issue is whether Rule 41 of the Federal

25 Rules of Criminal Procedure authorized the NIT warrant to

issue.  The Defendant argues that even if the warrant

authorized searches outside of the Eastern District of

Virginia, the warrant exceeded the magistrate judge's scope of

authority under Federal Rule of Criminal Procedure 41 and that

the good-faith exception does not apply.

The U.S. argues that the NIT warrant was authorized

by Rule 41(b), and in any event, the search here is covered by

the good-faith exception under *Leon*.  The authority of a

magistrate judge to issue a warrant is covered by both Rule 41

and the magistrate judge's enabling statutory authority set out

in 28, U.S. Code, Section 636.  As the Court noted in *U.S. v.

Matish*, 2016 WL 3455776, the provisions are intertwined.

Section 636 grants the magistrate judge authority set

out by law and by the Rules of Criminal Procedure.  Rule 41(b)

grants magistrate judges authority to issue warrants under

several scenarios.  The United States argues that three

provisions of the rule apply here:  Rule 41(b)(1), (b)(2), and

(b)(4).  The Government focuses on Rule 41(b)(4), which

provides "a magistrate judge with authority in the district has

authority to issue a warrant to install within the district a

tracking device; the warrant may authorize use of the device to

track the movement of a person or property located within the

district, outside the district, or both."  A tracking device is

defined by Rule 41(a)(2)(E) to be "an electronic or mechanical

device which permits the tracking of the movement of a person

1  or object."

2          The Defendant cites two decisions that have concluded

3  that the NIT is not like a tracking device and, thus, exceeded

4  Rule 41.  The Government cites cases holding to the contrary.

5          The Court concludes that the more persuasive cases

6  are those that are cited by the Government.  The Court would,

7  therefore, conclude that the NIT operated, in effect, like a

8  tracking device under 41(b)(4).  The NIT was installed in the

9  Eastern District of Virginia on the electronic signal sent by

10  the Defendant to the Playpen server in the Eastern District of

11  Virginia when the Defendant requested that the Playpen server

12  deliver other information, here, child pornography, to him.

13  The Defendant made a virtual trip to the Eastern District of

14  Virginia with his electronic request to the Playpen server.

15  While the Playpen post was being downloaded, the NIT sent its

16  information to the FBI on the same connection used by the

17  Defendant to retrieve the contraband, child pornography.  So

18  the NIT identifies the source of the signal that has reached

19  into the Eastern District of Virginia and the Playpen website.

20          Notably, Rule 41(a)(2)(A) defines property for

21  purposes of the tracking device to include as well information.

22  So the NIT is permitting the Government to track the movement

23  of the electronic information, here, the Playpen forum

24  information about child pornography, requested by a user.  In

25  some ways, the NIT may be less intrusive than a tracking

1  device, but the NIT identifies the location of the information

2  insofar as it is sent to the recipient's computer.  A mobile

3  tracking device, by contrast, follows the vehicle wherever it

4  goes.

5           Having reached this conclusion, the Court need not

6  reach the Government's other arguments under Rule 41, including

7  the argument that Rule 41 should be read broadly to allow

8  warrants not expressly allowed by the rule.  However, I do find

9  that even if Rule 41 did not authorize the warrant, and

10 certainly reasonable minds might differ on that, there are

11 cases going both ways.  I would find and do find that the

12 search was justified by the good-faith exception to the warrant

13 requirement set forth in *U.S. v. Leon* at 468 U.S. 897.

14           In *U.S. v. Leon*, the Supreme Court established a

15 good-faith exception to the exclusionary rule.  Under the

16 exception, a Court need not exclude evidence obtained pursuant

17 to a later-invalidated search warrant if law enforcement's

18 reliance on the warrant was objectively reasonable, as noted by

19 the Fourth Circuit in *U.S. v. Doyle*, 650 F.3d at 467.

20           There are four exceptions to this rule:

21           The first is if the issuing magistrate judge is

22 misled by information in the affidavit that the affiant knows

23 or should know is false.

24           The second is if the issuing magistrate judge

25 completely abandons his or her judicial role.

1          The third is if the affidavit includes so little

2    indicia of probable cause that official believe in its

3    existence is entirely unreasonable.

4          And the fourth is if the warrant is so facially

5    deficient that the executing officer cannot reasonably presume

6    it to be valid.

7          All of these are set out in *U.S. v. Leon* at page 923.

8       Here, the agents' reliance on the NIT warrant was

9    objectively reasonable, and the agents acted in good faith.  An

10   experienced and neutral magistrate judge reviewed the warrant

11   application, and the magistrate judge concluded that probable

12   cause existed to issue the NIT warrant.

13      None of the exceptions to the *Leon* rule apply here.  There

14   is no evidence that the FBI intentionally or recklessly misled

15   the magistrate judge in its quest to obtain the NIT warrant,

16   either on the scope of the warrant or in the information

17   concerning the logo change.

18      The warrant application detailed ample probable cause to

19   support the warrant, as I've already noted.  The affidavit also

20   adequately described the items to be seized and the places to

21   be searched.  There is also no indication that the FBI engaged

22   in any type of improper conduct or had any misjudgment in

23   relying on the NIT warrant.  There is no evidence that the

24   magistrate judge abandoned her judicial role or failed to read

25   the warrant application and warrant carefully.  Nor is the

1  warrant full of boilerplate; rather, it is particularized to

2  the situation at hand.

3      The Defendant argues that the magistrate judge should have

4  shown that the warrant would exceed Rule 41, and the Court

5  disagrees.  In fact, there are many courts that have found that

6  the warrant is, in fact, covered by Rule 41, and the fact that

7  many courts have reached this conclusion is simply further

8  proof that law enforcement officers would have been reasonable

9  to have relied on the magistrate judge's issuance of the

10 warrant, and that it was authorized.

11     Accordingly, even if the deployment of the NIT exceeded

12 Rule 41 -- as I said, reasonable minds may differ on that -- I

13 would find that it would not be appropriate to suppress the

14 information in this case because of the fact that the officers

15 acted in good faith and the *Leon* exception would apply.

16     So having considered -- I believe I've covered the

17 principal arguments raised here, but having considered all the

18 arguments raised in the briefing, for these reasons, the motion

19 to suppress will be denied.

20     Anything further I need to address at this point?

21         **MS. GLEASON:**  Not for the Defendant, Your Honor.

22         **MR. IVERSON:**  Not from the Government, Your Honor.

23         **THE COURT:**  Give me just one moment.  I know that's

24 not the result you were hoping for, Mr. Mascetti, but,

25 unfortunately, that's my ruling in this case.

USA v. Mascetti  -- Motion Ruling  -- 10/24/16

1          All right.  Unless there is anything further then,

2    we'll adjourn Court.  Please adjourn Court.

3          (END OF PROCEEDINGS AT 11:30 A.M.)

4

5                              * * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT

2   MIDDLE DISTRICT OF NORTH CAROLINA

3   CERTIFICATE OF REPORTER

4

5

6           I,  Briana L. Nesbit, Official Court Reporter,

7   certify that the foregoing transcript is a true and correct

8   transcript of the proceedings in the above-entitled matter.

9

10          Dated this 9th day of November 2016.

11

12

13          _____
            Briana L. Nesbit, RPR

14          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25