UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,

       - against –

YANG KIM,
   also known as ANDREW KIM,

               Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CR-191 (PKC)

PAMELA K. CHEN, United States District Judge:

      On April 14, 2016, a grand jury returned a two-count indictment against Defendant Yang Kim. The indictment charged Defendant with one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(4) and (b)(2), and one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). On February 14, 2017, Defendant filed a motion to suppress all evidence obtained from the government's search of his computer on the basis that the search warrant violated his rights under the Fourth Amendment. (Defendant's Brief ("Def. Br."), Dkt. 33.) He asks, in the alternative, that the Court hold a *Franks* hearing to determine "whether the agent signing the warrant misrepresented the probable cause supporting the warrant." (*Id.* at 3 n.1.) Because the Court finds that the government acted in good faith in obtaining the search warrant, Defendant's motion is denied.[1]

---

[1] In light of this order, Defendant's motion to compel the NIT source code (Dkt. 43) is denied insofar as it based on Defendant's need to obtain evidence to support his motion to suppress.

**BACKGROUND**

The Court assumes the parties' familiarity with the facts in this case and thus recites them only to the extent relevant to the Court's analysis.[2]

On February 20, 2015, Federal Bureau of Investigation ("FBI") Special Agent Douglas Macfarlane swore out an affidavit in support of an application for a search warrant in the Eastern District of Virginia. (NIT Warrant Application, Dkt. 33, at 18-51.)[3] The subject of that warrant was "Playpen," a website "dedicated to the advertisement and distribution of child pornography" and "the discussion of matters pertinent to child sexual abuse." (*Id*. at 28.) Because Playpen operated on the "Tor"[4] network—a network designed to maintain a user's anonymity[5]—the FBI could not easily identify Playpen users. (*Id.* at 28-29.) As a result, the FBI obtained a search warrant (the "NIT Warrant") authorizing it to deploy a "Network Investigative Technique" ("NIT") onto any computer used to log into the Playpen website. The NIT was deployed from the Playpen server located in the Eastern District of Virginia (*id*. at 41-42) and placed onto the "activating" computers—defined as the computer "of any user or administrator who logs into [Playpen] by entering a username and password" (*id.* at 50)—located anywhere in the United

---

[2] For further factual background, *see, e.g.*, *United States v. Matish*, 93 F. Supp. 3d 585 (E.D. Va. 2016); *United States v. Darby*, 190 F. Supp. 3d 520 (E.D. Va. 2016); *United States v. Werdene*, 188 F. Supp. 3d 431 (E.D. Pa. 2016).

[3] All page references in this Order are to the ECF pagination of the document.

[4] "Tor" stands for "The Onion Router." (Dkt. 33, at 28.)

[5] "The Tor software protects users' privacy online by bouncing their communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual IP address which could otherwise be used to identify a user." (Dkt. 33, at 29.)

States.[6] *United States v. Allain*, 213 F. Supp. 3d 236, 249 (D. Mass. 2016). By installing the NIT onto Playpen users' computers, the FBI could identify the IP addresses, and eventually the individuals, that logged into the site.

In the Warrant Application, Special Agent Macfarlane stated that there was "probable cause to believe there exist[ed] evidence, fruits, and instrumentalities of criminal activity related to the sexual exploitation of children on computers that access [Playpen], in violation of 18 U.S.C. §§ 2251 and 2252A," and that the search authorized by the NIT Warrant would help the FBI to identify the computers used to log into Playpen and the locations and users of those computers. (NIT Warrant, at 49.) When deployed, the NIT would cause the user's computer, *i.e.*, the "activating" computer, to transmit the following information to the government's server:

> 1) the computer's actual IP address and the date and time that the NIT determined what that IP address was;
>
> 2) a unique identifier generated by the NIT to distinguish data from that of other computers;
>
> 3) the type of operating system running on the computer;
>
> 4) information about whether the NIT had already been delivered to the "activating" computer;
>
> 5) the computer's Host Name;
>
> 6) the computer's active operating system username; and
>
> 7) the computer's media access control ("MAC") address.

(*Id.* at 51.)

The NIT Warrant was issued on February 20, 2015, by Theresa Carroll Buchanan, a United States Magistrate Judge for the Eastern District of Virginia.

---

[6] Indeed, as Defendant notes (Dkt. 33, at 15), the "activating" computer could even be outside the United States.

## DISCUSSION

This case is one of more than 60 cases around the country in which the validity of the NIT Warrant has been challenged. (*See* Government's Opposition, Dkt. 34, at 5-7 nn.3-5 (collecting cases)); *see also United States v. Dzwonczyk*, No. 4:15-CR-3134, 2016 WL 7428390, at *4 (D. Neb. Dec. 23, 2016) ("[T]he Playpen investigation has resulted in nationwide litigation, producing largely divergent opinions regarding the validity of the NIT warrant under Fed. R. Crim. P. 41(b), and the applicability, if at all, of the exclusionary rule."). As the Middle District of Tennessee explained in *United States v. Austin*,

> Numerous courts across the country have considered the validity of the same NIT Warrant challenged here. In general terms, the decisions fall into three categories. Several courts have determined that the NIT Warrant violated Rule 41(b), or assumed without deciding that the warrant violated Rule 41(b), but, nonetheless, concluded that suppression was not warranted. Other courts have determined that the NIT Warrant did not violate Rule 41(b) because it is a "tracking device" authorized by Rule 41(b)(4), but even if that were not the case, suppression is not warranted. Finally, a few courts have concluded that the NIT Warrant violated Rule 41(b), and ordered suppression as a remedy.

230 F. Supp. 3d 828, 832-33 (M.D. Tenn. 2017) (collecting cases) (internal citations omitted).

This case is no exception: Kim argues that the NIT Warrant violated the territorial limitations of the Federal Magistrates Act and Federal Rule of Criminal Procedure 41(b) ("Rule 41(b)").[7] Specifically, he contends that his Fourth Amendment protection against illegal searches

---

[7] Both Rule 41(b) and Section 636 of the Federal Magistrates Act concern the scope of a magistrate judge's authority. Rule 41(b) sets forth a magistrate judge's authority to issue a search warrant. It provides that:

(1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

was violated because "a magistrate judge in the Eastern District of Virginia authorize[d] a search in New York" in violation of Rule 41(b). (Def. Br. 7-11); *see also United States v. Hammond*, No.

---

> (3) a magistrate judge—in an investigation of domestic terrorism or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;
>
> (4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and
>
> (5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:
>
>> (A) a United States territory, possession, or commonwealth;
>> (B) the premises—no matter who owns them—of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or
>> (C) a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

Fed. R. Crim. P. 41(b). Section 636(a) of the Federal Magistrates Act addresses a magistrate judge's jurisdiction and provides, in relevant part:

> (a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law—
>
>> (1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Court. . . .

28 U.S.C. § 636. As the Eastern District of Virginia noted in *Matish*, "the Court's analyses of whether the NIT Warrant was statutorily permissible and whether it was allowed under Rule 41(b) are necessarily intertwined." 193 F. Supp. 3d at 611 (citation and internal quotation marks omitted). Indeed, "[f]or the magistrate judge to have had jurisdiction to issue the warrant under Section 636(a), she must have had authority to do so under Rule 41 (b)." *Id*. (citation and internal quotation marks omitted).

5

16-CR-102, 2016 WL 7157762, at *3 (N.D. Cal. Dec. 8, 2016) ("The critical issue here is that the magistrate judge in the Eastern District of Virginia signed off on a warrant that authorized the search of 'activating computers' located outside of her district."). According to Kim, this violation of Rule 41(b) rendered the warrant void *ab initio* and unconstitutional, and, therefore, "no ['good faith'] exception to the Fourth Amendment warrant requirement applies, and the fruits of the search should be suppressed . . . with no further inquiry." (Def. Br. 12-13.) In the alternative, he argues that even if the good faith exception is applicable, "the Court should still suppress the fruits of the NIT because the government here did not act in good faith." (Defendant's Reply Brief ("Def. Reply Br."), Dkt. 35, at 6.)

The Court need not decide whether the NIT Warrant was validly issued.[8] Rather, assuming without deciding that the NIT Warrant was void *ab initio*, the Court finds that suppression is not warranted under the good faith exception to the exclusionary rule first announced by the Supreme Court in *United States. v. Leon*, 468 U.S. 897 (1984). *See also Davis v. United States*, 564 U.S. 229 (2011); *Herring v. United States*, 155 U.S. 135 (2009); *Arizona v. Evans*, 514 U.S. 1 (1995).

## A. Whether the Good Faith Exception Applies Where a Warrant Is Void *Ab Initio*

Kim argues that the good faith exception cannot apply where a search warrant was "void *ab initio*." (Def. Br. 11-12.) The Court disagrees, and joins the three Courts of Appeals and more than 40 district courts that have considered and rejected this argument with respect to the NIT

---

[8] The Court, however, rejects the argument that the NIT was a "tracking device" and that the warrant was therefore valid under Rule 41(b)(4). In reality, the NIT did not transmit any location data until the NIT software program was downloaded onto the "activating" computer and then searched the computer for the data necessary to identify the computer and its location. *See, e.g.*, *United States v. Werdene*, 188 F. Supp. 3d 431 (E.D. Pa. 2016); *United States v. Henderson*, No. 15-CR-565, 2016 WL 4549108 (N.D. Cal. Sep. 1, 2016).

Warrant.[9] As both the Supreme Court and Second Circuit have held, a violation of the Fourth Amendment "does not necessarily result in the application of the exclusionary rule." *United States*

---

[9] Indeed, it is worth noting that with the First Circuit's decision in October 2017, suppression has not been granted in any NIT Warrant case. *See United States v. Horton*, 863 F.3d at 1050 ("Our review of relevant Supreme Court precedent leads us to . . . [the] conclusion[] that the *Leon* exception can apply to warrants void *ab initio* like this one."); *United States v. Workman*, 863 F.3d 1313, 1317 (10th Cir. 2017) ("Even if the warrant had been invalid, the *Leon* exception would still apply."); *Levin*, No. 16-1567, 2017 WL 4855774 (1st Cir. Oct. 27, 2017) (reversing the lower court's finding that "the good-faith exception is inapplicable because the warrant at issue here was void *ab initio*"); *United States v. Sasiadek*, No. 15-CR-159W, 2017 WL 5019257 (W.D.N.Y. Nov. 2, 2017); *United States v. Brooks*, No. 16-CR-6028, 2017 WL 4641258, at *2 (W.D.N.Y. Oct. 16, 2017) (finding a "split of authority as to whether a violation of Rule 41 is of constitutional magnitude warranting suppression. Rather than definitively rule on that matter, [the Court] relied on the good faith exception of *Leon*."); *United States v. Leonard*, No. 17-CR-135, 2017 WL 4478330 (E.D. Va. Oct. 6, 2017); *United States v. Eqal*, No. CR 5:17-32-KKC, 2017 WL 4150467 (E.D. Ky. Sept. 19, 2017); *United States v. Halgren*, No. SA-16-CR-008-XR, 2017 WL 3741558 (W.D. Tex. Aug. 30, 2017); *United States v. Cruz-Fajardo*, No. 1:16-CR-0014-TCB, 2017 WL 3634278 (N.D. Ga. Aug. 23, 2017); *United States v. Wheeler*, No. 1:15-CR-390-MHC-JFK, 2017 WL 3589564 (N.D. Ga. Aug. 21, 2017); *United States v. Dorosheff*, No. 16-30049, 2017 WL 1532267 (C.D. Ill. Apr. 27, 2017); *United States v. Scanlon*, No. 2:16-CR-73, 2017 WL 3974031 (D. Vt. Apr. 26, 2017) ("No different outcome is warranted if the court assumes *arguendo* that a Fourth Amendment violation took place."); *United States v. Allen*, No. 3:15-CR-221, Dkt. 54 (D. Conn. Mar. 30, 2017); *United States v. Schuster*, No. 1:16-CR-51, 2017 WL 1154088 (S.D. Ohio Mar. 28, 2017); *United States v. Gaver*, No. 3:16-CR-88, 2017 WL 1134814 (S.D. Ohio Mar. 27, 2017); *United States v. Hachey*, No. 5:16-CR-128, Dkt. 26 (E.D. Pa. Mar. 7, 2017); United *States v. Taylor*, 250 F. Supp. 3d 1215 (N.D. Ala. 2017); *United States v. Sullivan*, 229 F. Supp. 3d 647 (N.D. Ohio 2017); *United States v. Jones*, 230 F. Supp. 3d 819 (S.D. Ohio 2017); *United States v. Pawlak*, 237 F. Supp. 3d 460 (N.D. Tex. 2017); *United States v. Perdue*, 237 F. Supp. 3d 471 (N.D. Tex. 2017); *United States v. McLamb*, 220 F. Supp. 3d 663 (E.D. Va. 2016); *United States v. Lough*, 221 F. Supp. 3d 770 (N.D. W.Va. 2016); *Darby*, 190 F. Supp. 3d 520; *United States v. Jean*, 207 F. Supp. 3d 920 (W.D. Ark. 2016); *United States v. Anzalone*, 208 F. Supp. 3d 358 (D. Mass. 2016); *Werdene*, 188 F. Supp. 3d 431; *United States v. Ammons*, 207 F. Supp. 3d 732 (W.D. Ky. 2016); *United States v. Knowles*, 207 F. Supp. 3d 585 (D.S.C. 2016); *United States v. Broy*, 209 F. Supp. 3d 1045 (C.D. Ill. 2016); *United States v. Dzwonczyk*, No. 4:15-CR-3134, 2016 WL 7428390 (D. Neb. Dec. 23, 2016); *United States v. Vortman*, No. 16-CR-00210-TEH-1, 2016 WL 7324987 (N.D. Cal. Dec. 16, 2016); *United States v. Owens*, No. 16-CR-38-JPS, 2016 WL 7053195 (E.D. Wis. Dec. 5, 2016); *United States v. Tippens*, No. 3:16-CR-5110-RJB, Dkt. 106 (W.D. Wa. Nov. 30, 2016); *United States v. Kienast*, No. 16-CR-103, 2016 WL 6683481 (E.D. Wis. Nov. 14, 2016); *United States v. Stepus*, No. CR 15-30028-MGM, 2016 WL 6518427 (D. Mass. Oct. 28, 2016); *United States v. Mascetti*, No. 16-CR-308, Dkt. 29 (M.D.N.C. Nov. 9, 2016) (transcript of oral order from October 24, 2016); *United States v. Libbey-Tipton*, No. 1:16-CR-236-PAG, Dkt. 19 (N.D. Ohio Oct. 19, 2016); *Henderson*, 2016 WL 4549108; *United States v. Scarbrough*, No. 3:16-CR-35, 2016 WL 8677187 (E.D. Tenn.

*v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010); *see also Herring*, 555 U.S. at 138. This is because the exclusion of evidence obtained in violation of the Fourth Amendment "is a 'prudential' remedy, crafted by the Supreme Court," *United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir.), *cert. denied*, 136 S.Ct. 433 (2015) (citation omitted), "not a personal constitutional right," *Davis*, 564 U.S. at 236 (citation omitted). The purpose of the exclusionary rule "is not to redress the injury to the privacy of the search victim," but to "deter police misconduct." *United States v. Calandra*, 414 U.S. 338, 347, 351 (1974). Therefore, suppression involves a two-part inquiry: (1) were an individual defendant's Fourth Amendment rights violated; and (2) if so, would suppression of the ill-gotten evidence "deter[] Fourth Amendment violations in the future." *Herring*, 555 U.S. at 141; *see also United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (finding that "[t]he Supreme Court has effectively created a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, 'the benefits of deterrence must outweigh the costs'" (quoting *Herring*, 555 U.S. at 141)). Contrary to Defendant's argument, this "basic insight of the *Leon* line of cases," *Davis*, 564 U.S. at 238 (internal quotation

---

Aug. 26, 2016), *report and recommendation adopted*, No. 3:16-CR-35, 2016 WL 5900152 (E.D. Tenn. Oct. 11, 2016); *United States v. Adams*, No. 6:16-CR-11-ORL-40GJK, 2016 WL 4212079 (M.D. Fla. Aug. 10, 2016); *United States v. Acevedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016); *United States v. Eure*, No. 2:16CR43, 2016 WL 4059663 (E.D. Va. July 28, 2016*); United States v. Rivera*, 2:15-CR-266-CJB-KWR, Dkt. 69 (E.D. La. July 20, 2016); *United States v. Caswell*, No. 2:16 CR 134 FTM 29 MRM, 2017 WL 3600940 (M.D. Fla. July 11, 2017), *report and recommendation adopted*, No. 2:16 CR 134 FTM 29 MRM, 2017 WL 3583535 (M.D. Fla. Aug. 18, 2017)*; United States v. Michaud*, No. 3:15-CR-05351-RJB, 2016 WL 337263 (W.D. Wash. Jan. 28, 2016); *United States v. Pierce*, Nos. 8:13CR106, 13CR107, 13CR108, 2014 WL 5173035 (D. Neb. Oct. 14, 2014), *on reconsideration in part sub nom. United States v. Laurita*, No. 8:13CR107, 2016 WL 4179365 (D. Neb. Aug. 5, 2016), *and aff'd in part sub nom. United States v. Cottom*, 679 Fed. App'x 518 (8th Cir. 2017), *and aff'd sub nom. United States v. Huyck*, 849 F.3d 432 (8th Cir. 2017); *cf. United States v. Duncan*, No. 3:15-CR-00414-JO, 2016 WL 7131475 (D. Or. Dec. 6, 2016); *United States v. Johnson*, No. 15-00340-01-CR-W-GAF, 2016 WL 6136586 (W.D. Mo. Oct. 20, 2016); *United States v. Smith*, No. 4:15-CR-467, Dkt. 41 (S.D. Tex. Sep. 28, 2016).

marks omitted), "applies equally to searches conducted with or without a warrant," *Raymonda*, 780 F.3d at 118 n.5.

Defendant's argument that the issuance of the NIT Warrant in violation of Rule 41(b) rendered the warrant void *ab initio* and thus unconstitutional rests entirely on an unsupported and outdated reading of *dicta* from the Second Circuit's decision in *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975). (Def. Br. 13-14; Def. Reply Br. 3-4). In *Burke*, the defendant challenged the government's seizure of a shotgun pursuant to a search warrant, claiming that the warrant's failure to comply with certain requirements of Rule 41 rendered it invalid and warranted suppression. The Second Circuit, however, rejected this argument, finding that the violations of Rule 41 were "not of sufficient consequence to justify use of the exclusionary rule." 517 F.2d at 385.

In discussing the "relatively little case law on the question [of] how far the failure of a warrant to conform to provisions of Rule 41 other than those concerned with the constitutional requirements of probable cause and particularity of description will trigger the exclusionary rule," Judge Henry Friendly examined *Navarro v. United States*, 400 F.2d 315 (5th Cir. 1968), *overruled by United States v. McKeever*, 905 F.2d 829 (5th Cir. 1990), a Fifth Circuit case in which a search warrant was issued by a state court judge who was not authorized to do so under Rule 41. *Burke*, 517 F.2d at 385. There, Judge Friendly explained, the exclusionary rule was applied because the defect in the warrant was "basic", such that "there was in effect no warrant at all for federal purposes." *Id.* at 385-86. Judge Friendly contrasted *Navarro* with cases where the courts declined to exclude evidence based on violations of Rule 41. *See id.* (citing *United States v. Ravich*, 421 F.2d 1196, 1201-02 (2d Cir.), *cert. denied*, 400 U.S. 834 (1970) (evidence seized during nighttime search not excluded where warrant omitted authority to search at night); *United States v. Soriano*, 482 F.2d 469, 478-79 (5th Cir. 1973), *modified en banc on other grounds*, 497 F.2d 147 (5th Cir.

1974) (refusing to exclude evidence where warrant failed to state name of executing agent)). Judge Friendly then reiterated the Second Circuit's caution that, because the exclusionary rule is "a blunt instrument, conferring an altogether disproportionate reward not so much in the interest of the defendant as in that of society at large[,] . . . courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude." *Id.* at 386 (citation and internal quotation marks omitted). Judge Friendly concluded with:

> Without assuming to make a definitive formulation, we think that, except in a case like *Navarro* where, if the court was right in holding that Rule 41 applied, the defect made what was done in effect an unconstitutional warrantless search, violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Id*. at 386-87.

It is this dicta from *Burke* that Kim seizes upon to argue that the NIT Warrant was void *ab initio* and unconstitutional because the issuing judge exceeded the geographical scope of Rule 41. The Court disagrees for several reasons. First, *Burke* expressly states that this language from the decision does not "make a definitive formulation" or rule. *Burke*, 517 F.2d at 386. Second, even if *Burke* can be interpreted as endorsing *Navarro*—which has since been overruled—and equating the "invalidity" of a warrant with unconstitutionality that requires exclusion, neither *Burke* nor *Navarro* provides guidance on the situation presented here, *i.e.*, a warrant issued by a federal magistrate judge based on probable cause, but exceeding the geographical limitation imposed by Rule 41.[10] Third, to the extent that *Burke* established a mandatory suppression rule for

---

[10] To the extent that Defendant is arguing that the exclusionary rule should still be applied under the standard set forth in *Burke* if the Court finds the NIT Warrant, though violating Rule 41, was not unconstitutional (Def. Br. 14-16), the Court need not address that argument given its finding that the good faith exception applies in this case.

constitutional Rule 41 violations, that rule is no longer controlling, in light of the Supreme Court's decisions in *Leon* and its progeny. In *Leon*, the Supreme Court, in effect, rejected *Burke*'s bright-line distinction between "basic" and non-"basic" defects in a warrant for purposes of deciding whether the exclusionary rule must be applied, finding that "[w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Leon*, 468 U.S. at 906 (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)); *see also Horton*, 863 F.3d at 1050 ("The government argues that this distinction between 'voidable' and 'void' warrants is untenable in the good-faith exception context, and we agree."); *Lough*, 221 F. Supp. 3d at 783 n.12 ("This view also makes more sense when looking at the Supreme Court decisions. For example, justifying exclusion when a warrant is void *ab initio*, but inclusion when a warrant is non-existent, as in *Herring*, would require some semantic gymnastics."). Indeed, as the Second Circuit has recognized since *Leon*, a Fourth Amendment violation "does not necessarily result in the application of the exclusionary rule," *Rosa*, 626 F.3d at 64, and the good faith exception can be applied where there is no warrant at all, *Raymonda*, 780 F.3d at 118 n.5.

Thus, the Court finds that the good faith doctrine can be applied to a search warrant that violates Rule 41 and is void *ab initio*.

## B. Whether the Good Faith Exception Is Applicable in this Case

Having found that the good faith exception to the exclusionary rule can apply where a warrant is void *ab initio*, the Court considers whether it should apply in this case. The good faith inquiry is confined to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*,

11

555 U.S. at 145 (citation and internal quotation marks omitted). Defendants seeking to invoke the exclusionary rule face a "high obstacle" due to "the rule's costly toll upon truth-seeking and law enforcement objectives." *Id.* at 141 (quoting *Penn. Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 364-65 (1998)). However, the Supreme Court has identified at least four circumstances in which the good faith exception does not apply:

> (1) where the issuing magistrate has been knowingly misled;
>
> (2) where the issuing magistrate wholly abandoned his or her judicial role;
>
> (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and
>
> (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 922-23); *see also Herring*, 555 U.S. at 144 (finding suppression is warranted where officers engage in "deliberate, reckless, or grossly negligent conduct").

Defendant argues that the Court should find that the government did not act in good faith in obtaining the NIT Warrant for two reasons: (1) "the officers knew or should have known that a Rule 41 warrant issued by a Virginia magistrate judge cannot authorize a search in New York" and (2) the government knew that the NIT "could not be authorized to operate out of state under the prior version of Rule 41." (Def. Reply Br. 6.)[11]

---

[11] Defendant also states that the evidence should be suppressed because he was prejudiced by "the government['s] delayed notice of the search to Mr. Kim" in violation of Fed. R. Crim. P. 41(f)(1)(C). (Def. Br. 13-14.) The Court rejects this argument because Defendant provides no evidence other than a conclusory statement that he was, in fact, prejudiced. (*Id.* at 14.) Furthermore, even if the delay was prejudicial, suppression is not warranted where the good faith exception applies to the underlying Rule 41 violation. *See, e.g., United States v. Cottom,* 679 Fed. App'x 518, 521-22 (8th Cir. 2017); *Libbey-Tipton*, No. 16-CR-236, Dkt. 19, at *12-13 (rejecting challenge to NIT Warrant based on delayed notice to defendant); *Pierce*, 2014 WL 5173035, at *4–5 (same). The Court also rejects Defendant's arguments that the NIT Warrant "was not

Generally, a warrant issued by a neutral magistrate judge is sufficient to establish that the law enforcement officer has "acted in good faith in conducting the search," so long as his or her "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant . . . [is] objectively reasonable." *Leon*, 468 U.S. at 922; *see also id.* at 921-22 ("[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.") (citation and internal quotation marks omitted). Here, because Defendant does not challenge the probable cause underlying the warrant or the neutrality of the magistrate judge, the Court need only consider whether the FBI agents' reliance on the "technical sufficiency" of the warrant was "objectively reasonable." The Court finds that the FBI agents acted with good faith "by diligently gathering information before submitting a detailed affidavit that fully apprised the issuing magistrate judge of all aspects of the NIT process, including the fact that the server for [Playpen] would, at all times, be located in the Eastern District of Virginia, while the activating computers may be located outside the district." *Sullivan*, 229 F. Supp. 3d at 658; *see also Duncan*, 2016 WL 7131475, at *4. Specifically, the NIT Warrant explicitly stated that the NIT would be used to connect to the activating computers "wherever located." (NIT Warrant at 29.) Therefore, the application "as a whole did not, and in fact could not, hide from the magistrate that the NIT would target Playpen users without geographic bounds." *Hachey*, 16-CR-128-JLS, Dkt. 26, at 18. In light of the fact that the magistrate judge possessed this geographical information and still signed the warrant, the agents had no reason to doubt the magistrate's authority to do so. *See Workman*, 863 F.3d at 1321 ("We expect agents executing warrants to be 'reasonably well-trained,' but we do not expect them to understand legal nuances the way that an attorney would.").

---

sufficiently particularized, and was a general warrant," because he failed to brief them. (Dkt. 38, at 4.)

To the extent "that a mistake was made in issuing the warrant, it was made by the magistrate judge, not by the executing officers, and the executing officers had no reason to suppose that a mistake had been made and the warrant was invalid." *Levin*, 2017 WL 4855774, at *6. "A magistrate judge's mistaken belief that she had jurisdiction, absent any indicia of reckless conduct by the agents, does not warrant suppression." *Werdene*, 188 F. Supp. 3d at 453; *see also Leon*, 468 U.S. at 916 ("[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."). Furthermore, there is "no evidence that any failure by the FBI to understand the intricacies of the jurisdiction of federal magistrates was deliberate," *Darby*, 190 F. Supp. 3d at 538, particularly given "the varying treatment of the NIT Warrant by district courts and magistrate judges alike," *Sullivan*, 229 F. Supp. 3d at 658.[12] Indeed, although this Court rejects the characterization of the NIT as a tracking device, that is far from a foregone conclusion.

Defendant's second argument that the agent knew that "the NIT was unauthorized" under the version of Rule 41(b) in effect when he sought the warrant is similarly unavailing. (Def. Reply Br. 6.) Defendant argues that the violation was deliberate because the Department of Justice had

---

[12] *See also Dzwonczyk*, 2016 WL 7428390, at *14 ("[T]he divergence in judicial opinions on this issue provides sufficient evidence that, at a minimum, the magistrate judge's authority was not 'clear' to law enforcement for purposes of the good faith exception . . . [therefore,] suppression is not the appropriate remedy[.]"); *Michaud*, 2016 WL 337263, at *7 ("[R]easonable minds can differ as to the degree of Rule 41(b)'s flexibility in uncharted territory."); *United States v. Deichert*, No. 5:16-CR-201-FL-1, 2017 WL 398370 (E.D.N.C. Jan. 28, 2017); *Mascetti*, No. 1:16-CR-308-1, Dkt. 29, at 18-19; *Adams*, 2016 WL 4212079; *cf. Levin*, 2017 WL 4855774, at *5 ("Faced with the novel question of whether an NIT warrant can issue—for which there was no precedent on point—the government turned to the courts for guidance."). "Even if it were misleading to label the place to be searched as the Eastern District of Virginia, a reasonable reader would have understood that the search would extend beyond the boundaries of the district because of the thorough explanation provided in the attached affidavit. This does not amount to a reckless disregard for the truth." *Horton*, 863 F.3d at 1052.

been trying to amend Rule 41(b) to explicitly allow magistrate judges to grant warrants like the NIT Warrant.[13]

> [But] the question is not what the government collectively knew. The question is what the individual law enforcement officers that submitted the warrant in this case knew. Defendant seeks to attribute to the FBI agents that sought the warrant the legal expertise of the DOJ lawyers but nothing indicates that these agents knew that the warrant might violate Rule 41(b). It is somewhat hard to understand why they would have even submitted the warrant if they thought it exceeded the magistrate judge's jurisdiction. If they were so inclined to flout the Federal Rules of Criminal Procedure, they might have forgone seeking the warrant in the first place.

*Eure*, 2016 WL 4059663, at *9; *see also Darby*, 190 F. Supp. 3d at 537 ("Defendant seeks to attribute to the FBI agents that sought the warrant the legal expertise of the DOJ lawyers, which is absurd.").

In fact, Special Agent McFarlane testified at a hearing in another NIT case about what he knew vis-à-vis the potential amendment to Rule 41(b).

> At the hearing[,] . . . Special Agent Macfarlane credibly testified that, prior to submitting the warrant affidavit, he was not aware that courts had denied similar warrant requests [to the NIT Warrant]. Nor was he aware that the DOJ was lobbying to expand the scope of a magistrate judge's authority under Rule 41 (b) to encompass such a request. When he presented Magistrate Judge Buchanan with the warrant affidavit, he believed that she had authority to sign it; after she did, he "absolutely" believed he had a valid warrant.

*Gaver*, 2017 WL 1134814, at *10 (citations omitted). Therefore, "there is no evidence or record to support a finding that the FBI agents who executed the NIT Warrant had any knowledge of the proposed amendment to Rule 41(b) such that their actions related to the NIT Warrant may be considered bad faith." *Caswell*, 2017 WL 3600940, at *19.

---

[13] On December 1, 2016, Rule 41(b) was so amended: "[A] magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if: (A) the district where the media or information is located has been concealed through technological means. . . ." Fed. R. Crim. P. 41(b)(6).

15

Furthermore, even if the agent was aware the rule was being amended, "an awareness that Rule 41 was subject to amendment merely demonstrates recognized ambiguities in the Rule, not that [the government] acted with deliberate disregard for the rule." *Vortman*, 2016 WL 7324987, at *12 (citation and internal quotation marks omitted); *see also Tippens*, 3:16-CR-5110-RJB, Dkt. 106, at 14-15; *Henderson*, 2016 WL 4549108, at *6.[14] Similarly, assuming that the Department of Justice attorneys or Assistant United States Attorneys who worked with Special Agent Macfarlane in obtaining the NIT Warrant were aware of the Department's efforts to amend Rule 41, this fact, in itself, would be insufficient to show bad faith on the part of the government, since this effort could readily be viewed as the Department's attempt to clarify the statute and make explicit Congress's intent to grant this authority to federal magistrate judges.

In conclusion, the Court finds that Defendant's arguments against the application of the good faith exception are unpersuasive. Therefore, Defendant's motion to suppress is denied.

## *FRANKS* HEARING

Defendant requests, in the alternative, that the Court hold a *Franks* hearing to determine "whether the agent signing the warrant misrepresented the probable cause to support the warrant" because "there is evidence that the FBI knew or should have known that Playpen's homepage no longer displayed child pornography at the time the NIT warrant was issued, and failed to convey that to [the] Magistrate Judge."[15] (Def. Br. 3 n.1.) This request is denied. Defendant has not made

---

[14] Because the Court finds that the government's reliance on the NIT Warrant was objectively reasonable, Defendant's request for a *Franks* hearing on the issue of whether the government intentionally or deliberately disregarded Rule 41(b) is denied. (Def. Br. 16.)

[15] The change to the home page was summarized in *Gaver:*

> Paragraph 12 of Macfarlane's February 20, 2015, affidavit describes the homepage of the Play Pen website as follows: "On the main page of the site, located to either side of the site name were two images depicting partially clothed prepubescent

"a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Indeed, Defendant does not explain how the change in the Playpen homepage would have made a material difference with respect to the probable cause determination for the NIT Warrant. In any event, the Court agrees with the decisions of the district courts that have addressed the change to Playpen's homepage, that the "logo change from two sexually suggestive minors to only one minor, who was not dressed as provocatively, but still posed in a sexual manner, does not significantly impact the probable cause determination." *Allen*, 3:15-CR-221, Dkt. 54, at 17; *see also Darby,* 190 F. Supp. 3d at 531; *Matish*, 193 F. Supp. 3d at 605-07 (finding no *Franks* hearing warranted); *Michaud*, 2016 WL 337263, *3 n.1 (same).

---

females with their legs spread apart." At the hearing [in *Gaver*], Macfarlane testified that this was the logo that appeared every time he viewed the homepage from September of 2014 through February 18, 2015. He did not access the site again between February 18, 2015, and February 20, 2015, when he submitted the warrant application. It is undisputed that, sometime in that two-day period, the logo was changed. On February 20, 2015, the homepage showed just one girl, perhaps slightly older than the girls previously depicted, wearing a short dress, fishnet stockings and posed in a sexually suggestive manner. Although one of the other agents may have signed onto the website on February 19, 2015, and observed this change, no one told Macfarlane about it.

2017 WL 1134814, at *5.

## CONCLUSION

For the reasons stated above, Defendant's motion to suppress is denied. Defendant's requests for *Franks* hearings are also denied.

SO ORDERED.

/s/Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: November 10, 2017
      Brooklyn, New York